STATE OF NEW MEXICO
COUNTY OF GRANT
SIXTH JUDICIAL DISTRICT

FILED
DISTRICT COURT OF
GRANT COUNTY, N.M.

2022 DEC -8 PM 2:05

RUBEN ESCANO,

     Plaintiff,

v.

MONITRONICS INTERNATIONAL, INC., a
Delaware Corporation, d/b/a BRINKS HOME
SECURITY; and JOHN DOE CALLER,

     Defendant.

Case No. _D-608-CV-2022-00275_

Judge    **TOM STEWART**
            **DIVISION I**

## COMPLAINT

COMES NOW, Plaintiff Ruben Escano, undersigned, and for his causes of action against the Defendants states and alleges as follows:

### Nature of the Case

1.     This civil action is brought forth in accordance with the United States Telephone Consumer Protection Act ("TCPA"), codified as 47 U.S.C. § 227, and the New Mexico Unfair Practices Act ("NMUPA"), codified as N.M. Stat. Ann. § 57-12, to, *inter alia*, recover statutory damages for automatically-dialed and unsolicited telemarketing calls, and to enjoin such calls.

2.     All of the telemarketing calls began with deceptive artificial voices typified by one such artificial voice: "Hi! This is Frank with Alarm Plus!"

3.     In enacting the TCPA, "Congress reported, 'many consumers are outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) at *3 (quoting TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)).

---

COMPLAINT                                  

4.      Defendants have inundated telephone subscribers throughout the country, including Plaintiff, with unsolicited telemarketing phone calls attempting to sell home alarm systems and monitoring services for those systems.

5.      Their telemarketing scheme has been the subject of litigation throughout the last decade:

> In the last several years, plaintiffs across the country have filed numerous claims against home alarm manufacturers, dealers, and monitoring companies, purportedly involved in an automated telemarketing scheme. Allegedly, the dealers market the alarm systems and monitoring services by making calls, either through use of an automated telephone dialing system or through use of an artificial or prerecorded voice, to prospective retail customers on behalf of the more reputable manufacturers and monitoring companies. Through this arrangement, the dealers receive cash and discounts on products from the manufacturers, the manufacturers increase their sales, and the monitoring companies obtain lucrative service contracts.

*In re Monitronics Int'l, Inc.*, MDL NO. 1:13MD2493, at *5–6 (N.D.W. Va. Apr. 30, 2015).

## The Parties

6.      Plaintiff RUBEN ESCANO is an individual and resident of Silver City, New Mexico, with a mailing address of 2311 Ranch Club Road, #2-180, Silver City, New Mexico 88061.

7.      Defendant MONITRONICS INTERNATIONAL, INC. ("Monitronics") is a for-profit corporation, organized under the laws of Delaware, with a principal address of 1990 Wittington Place, Farmers Branch, Texas 75234.  Its registered agent is Corporation Service Company at the address of 251 Little Falls Drive, Wilmington, Delaware 19808.  Monitronics does business as "Brinks Home Security."  It sells home alarm systems and monitoring services for those systems.

8.      Defendant JOHN DOE CALLER is an unknown individual or entity—but most likely an entity—who initiated the calls in question on behalf of Monitronics. Plaintiff reserves the right to amend this complaint once discovery reveals the true identity of this doe defendant.

## Jurisdiction

9.      Plaintiff is a resident and citizen of New Mexico and was in New Mexico at the time a majority of the calls described herein were received.

10.     Defendants relied on and availed themselves of the telecommunications infrastructure of New Mexico in their transmission of the calls in question.

11.     Defendants offer and market their products or services to residents of New Mexico using means which they know could reach residents of New Mexico, and in the manner in which Defendants offered and marketed their products and services to Plaintiff as alleged herein.

12.     Jurisdiction is proper for the TCPA claims under 47 U.S.C. § 227(b)(3) and § 227(c)(5).

13.     Jurisdiction is proper for the NMUPA claims because the NMUPA is a New Mexico state law and this New Mexico state court has original jurisdiction over claims arising from state law.

14.     Similarly, jurisdiction is proper for the trespass to chattels claims because this state court has original jurisdiction for such common law claims.

### Causes of Action

### Introduction

15.     Beginning June 24, 2020 and continuing to August 27, 2021, John Doe Caller initiated at least thirteen automatically-dialed and unsolicited telephone calls (hereinafter, "the calls") to Plaintiff's cell phone, which has a phone number ending in -8938.

16.     John Doe Caller made the calls on behalf of and under the direct, implied, or apparent authority of Monitronics.

17.     All of the calls began with a similar artificial voice which asked Plaintiff questions to qualify him for a home alarm system.  Such questions included, "Do you own your home?"

18.     During the calls, John Doe Caller attempted to avoid legal reproach by "spoofing" the phone numbers from which it called so that Plaintiff's cell phone, and any other telephones called, would show inaccurate caller ID information, and by instructing its employees not to immediately communicate the true name of the company calling even when Plaintiff, and any other telephone subscribers that were called, inquired as to the true name of the company.

19.     All of the calls were made in an attempt to sell Monitronics' home alarm system and its monitoring service for that system.

20.     Plaintiff's cell phone number, ending in -8938, has been listed on the Federal Trade Commission's National Do Not Call Registry for over a decade.  The FTC's National Do Not Call Registry is available to telemarketers wishing to operate within the law.

21.     During the calls, Defendants violated at least seven distinct prohibitions, proscribed by the TCPA, at least 84 times, specifically: 47 U.S.C § 227(b)(1)(A)(iii), § 227(b)(1)(B), § 227(b)(1)(D),    47 C.F.R. § 64.1200(a)(7)(i),    § 64.1200(c)(2),    § 64.1200(d)(1)-(2),    and § 64.1200(d)(4).

22.     Defendants also violated at least five distinct prohibitions of the NMUPA at least 65 times, specifically: N.M. Stat. Ann. §§ 57-12-22(A), 57-12-22(B)(1), 57-12-22(B)(7), 57-12-22(C)(1), and 57-12-22(C)(2).

### Relevant Facts and Law

23.     At no time, during the period in question, did Defendants have any prior business or contractual relationship with Plaintiff.

24.     Accordingly, Defendants do not have an "established business relationship," as defined by 47 C.F.R. § 64.1200(f)(6) and N.M. Stat. Ann. § 57-12-22(D)(1)(a), with Plaintiff.

25.     The calls were initiated for the purpose of encouraging the purchase of goods or services.

26.     Neither of the Defendants have received from Plaintiff any prior express invitation or permission to call him.

27.     Accordingly, the calls meet the definition of a "telephone solicitation" under 47 U.S.C. § 227(a)(4) and N.M. Stat. Ann. § 57-12-22(D)(4).

28.     In transmitting the calls, John Doe Caller utilized equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

29.     Accordingly, the equipment utilized was an "automatic telephone dialing system" (hereinafter, "ATDS") as defined by 47 U.S.C. § 227(a)(1).

30.     The type of ATDS used to initiate the calls was a predictive dialer. A predictive dialer is a type of dialing system that, given a set number of phone representatives, "predicts" the maximum number of telephone subscribers that can be called at once in order for the call to be

answered within a set period of time by a live phone representative—after the called person goes through an artificial voice prompt.

31.     Plaintiff uses his cell phone at home and for personal use, and therefore it is a residential phone.

## Concrete Injury

32.     The calls caused Plaintiff concrete injuries in fact.

33.     The calls caused a partial depletion of the charge of Plaintiff's cell phone's battery, a partial depletion of the lifespan of the LED backlight of the phone's display, and unwarranted wear and tear for at least both of those components.

34.     The calls aggravated Plaintiff, disrupted his days, and required him to divert attention away from his work and personal life to tend to and answer such unwarranted intrusions of his time.

35.     Accordingly, the calls were repeated invasions of Plaintiff's privacy that required him to divert attention away from his work and personal life to tend to and answer such intrusions of his time.

## Monitronics' Telemarketing Scheme

36.     Monitronics offers home alarm systems and monitoring services for those systems.

37.     In order to reach the maximum number of potential customers, Monitronics authorizes and directs certain telemarketing companies to sell these systems, as well as the concomitant contractual monitoring service for the systems, on its behalf.

38.     Monitronics describes these companies as their "dealers" and admits in guidance to investors that if "our dealers were to take actions in violation of [the TCPA], such as telemarketing to individuals on the 'Do Not Call' registry, we could be subject to fines, penalties, private actions,

investigations or enforcement actions by government regulators." SEC filings, i.e. Monitronics International, Inc., Registration Statement (Form S-1) (Dec. 17, 2019) at 17, archived at https://perma.cc/NLU7-QAEZ.

39.     Monitronics directs its dealers, including John Doe Caller, to make calls en-masse to telephone subscribers throughout the country in order to schedule installations of Monitronics' home alarm systems. To facilitate such scheduling, Monitronics allows the dealers, including John Doe Caller, access to Monitronics' internal scheduling system.

40.     Additionally, the dealers, including John Doe Caller, enroll telephone subscribers in Monitronics' monitoring service on a contractual basis. Monitronics in turn buys these contracts for monitoring service from the dealers, including John Doe Caller.

41.     Monitronics pays these dealers, including John Doe Caller, (1) sales commissions for scheduling the installations, and (2) payment to immediately acquire the dealers' interest in the contracts for monitoring service. These transactions are a pre-planned and seamless arrangement, made with prior agreement between Monitronics and John Doe Caller.

42.     As a result of acquiring the dealers' interest in the contracts for monitoring service, Monitronics gains valuable monthly payments from consumers who begin paying Monitronics directly for the alarm system monitoring service. The dealers are unable to provide consumers with monitoring service themselves. Therefore, selling these contracts to Monitronics is integral to the dealers' business model and the Defendants' telemarketing scheme.

### John Doe Caller, Operating as an Agent of Monitronics

43.     Monitronics knew or should have known that the volume of telephone subscribers that John Doe Caller scheduled for installations, or enrolled in monitoring service contracts, could

not be achieved merely by calling telephone subscribers without using an ATDS or by calling only those who had consented to such calls.

44.     Monitronics authorized and directed John Doe Caller to make the calls in question, in the manner as alleged in the counts *infra*.

45.     Accordingly, Monitronics is vicariously liable for the calls under the theory of actual authority.

46.     Monitronics authorized John Doe Caller to represent to telephone subscribers that John Doe Caller is authorized by Monitronics to sell its home alarm systems.

47.     During at least one call, including the January 4, 2021 call, a phone representative told Plaintiff that the phone representative was authorized *by Monitronics* to offer Monitronics' home alarm systems via telephone.

48.     Thus, Plaintiff believed that John Doe Caller indeed was authorized by Monitronics to offer Monitronics' home alarm systems.

49.     Accordingly, Monitronics is vicariously liable for the calls under the theory of apparent authority.

50.     Monitronics knew or should have known that John Doe Caller utilized an ATDS to make calls in the manner as alleged in the counts *infra*.

51.     Nonetheless, Monitronics paid John Doe Caller sales commissions for the installations it scheduled. Additionally, Monitronics bought the monitoring service contracts from John Doe Caller.

52.     Accordingly, Monitronics is vicariously liable for the calls because they were transmitted in a manner as alleged in the counts *infra* with the ratification of Monitronics.

53.     At all times relevant, John Doe Caller was operating on behalf of, to the benefit of, at the direction of, under control of, and as an agent of Monitronics.

### The Calls

54.     On June 24, 2020, John Doe Caller called Plaintiff from the phone number 802-877-7425.

55.     On August 11, 2020, John Doe Caller called Plaintiff from the phone number 802-124-7935.

56.     On August 20, 2020, John Doe Caller called Plaintiff from the phone number 802-344-8436.

57.     On December 21, 2020, John Doe Caller called Plaintiff from the phone number 802-344-8436. During this call, John Doe Caller allowed a delay of more than two seconds before responding to Plaintiff's completed greeting.

58.     On December 30, 2020, John Doe Caller called Plaintiff from the phone number 802-688-3918. During this call, John Doe Caller allowed a delay of more than two seconds before responding to Plaintiff's completed greeting.

59.     On January 4, 2021, John Doe Caller called Plaintiff from the phone number 802-453-8241. During this call, John Doe Caller allowed a delay of more than two seconds before responding to Plaintiff's completed greeting.

60.     On January 14, 2021, John Doe Caller called Plaintiff from the phone number 802-559-5816. During this call, John Doe Caller allowed a delay of more than two seconds before responding to Plaintiff's completed greeting.

61.     Again, on January 14, 2021, John Doe Caller called Plaintiff a second time that day.

62.     On May 17, 2021, John Doe Caller called Plaintiff from the phone number 802-868-3547.

63.     On June 28, 2021, John Doe Caller called Plaintiff from the phone number 802-904-1939.

64.     On August 17, 2021, John Doe Caller called Plaintiff from the phone number 802-346-1743.

65.     On August 26, 2021, John Doe Caller called Plaintiff from the phone number 802-487-8781.  During this call, John Doe Caller allowed a delay of at least eight seconds before responding to Plaintiff's completed greeting.

66.     On August 27, 2021 John Doe Caller called Plaintiff.  During this call, John Doe Caller allowed a delay of at least seven seconds before responding to Plaintiff's completed greeting.

## Counts

### COUNT I
**Violations of 47 U.S.C. § 227(b)(1)(A)(iii): Utilizing an ATDS to transmit a telephone call to a cell phone.**

67.     Paragraphs 1–66 are hereby incorporated by reference.

68.     When John Doe Caller called Plaintiff's cell phone on the dates alleged *supra*, John Doe Caller willfully or knowingly utilized an ATDS to do so.

69.     In so doing, Defendants willfully or knowingly violated 47 U.S.C. § 227(b)(1)(A)(iii).

### COUNT II
**Violations of 47 U.S.C. § 227(b)(1)(B): Utilizing an artificial or prerecorded voice to deliver a message to a telephone.**

COMPLAINT                                                                        Page 10 of 17

70.     Paragraphs 1–66 are hereby incorporated by reference.

71.     When John Doe Caller called Plaintiff's cell phone on the dates alleged *supra*, John Doe Caller willfully or knowingly utilized an artificial or prerecorded voice to deliver a message to Plaintiff's phone.

72.     In so doing, Defendants willfully or knowingly violated 47 U.S.C. § 227(b)(1)(B).

## COUNT III
**Violations of 47 U.S.C. § 227(b)(1)(D): Using an ATDS in such a way that two or more telephone lines of a multi-line business are engaged simultaneously.**

73.     Paragraphs 1–66 are hereby incorporated by reference.

74.     When Monitronics called Plaintiff's cell phone on the dates alleged *supra*, John Doe Caller willfully or knowingly utilized an ATDS in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

75.     In so doing, Defendants willfully or knowingly violated 47 U.S.C. § 227(b)(1)(D).

## COUNT IV
**Violations of 47 C.F.R. § 64.1200(a)(7)(i): Allowing a more than two-second delay before responding to answered call.**

76.     Paragraphs 1–66 are hereby incorporated by reference.

77.     When John Doe Caller called Plaintiff's cell phone on the dates specified *supra*, John Doe Caller willfully or knowingly allowed more than two seconds of silence before responding to Plaintiff's completed greeting.

78.     In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(a)(7)(i).

## COUNT V
### Violations of 47 C.F.R. § 64.1200(c)(2): Calling a telephone number on the Federal Trade Commission's National Do Not Call Registry.

79.     Paragraphs 1–66 are hereby incorporated by reference.

80.     When John Doe Caller called Plaintiff's cell phone on the dates alleged *supra*, John Doe Caller willfully or knowingly called a phone number registered on the Federal Trade Commission's National Do Not Call Registry and which Defendants knew or should have known was registered as such.

81.     In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(c)(2).

## COUNT VI
### Violations of 47 C.F.R. § 64.1200(d)(1)-(2): Failing to have a written policy for maintaining an internal do-not-call list.

82.     Paragraphs 1–66 are hereby incorporated by reference.

83.     Defendants either failed to institute a written policy for maintaining an internal do-not-call list, or failed to train their phone representatives and other personnel in the existence and proper use of an internal do-not-call list.

84.     In so doing, during each of the calls alleged *supra*, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(d)(1)-(2).

## COUNT VII
### Violations of 47 C.F.R. § 64.1200(d)(4): Failing to provide contact information for the sponsor of call.

85.     Paragraphs 1–66 are hereby incorporated by reference.

86.     When John Doe Caller called Plaintiff on the dates alleged *supra*, John Doe Caller failed to provide Plaintiff with a telephone number or address at which Plaintiff could contact the sponsor of the call—*i.e.*, Monitronics.

---

COMPLAINT                                                                                    Page 12 of 17

87.     In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(d)(4).

## COUNT VIII
### Violations of N.M. Stat. Ann. § 57-12-22(A): Utilizing an ATDS with a prerecorded message to transmit a telephone call to a cell phone.

88.     Paragraphs 1–66 are hereby incorporated by reference.

89.     Defendants have not received any consent from Plaintiff to transmit prerecorded messages to him.

90.     When John Doe Caller called Plaintiff's cell phone on the dates alleged *supra*, John Doe Caller willfully utilized an ATDS and prerecorded message to do so.

91.     In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(A).

## COUNT IX
### Violations of N.M. Stat. Ann. § 57-12-22(B)(1): Failing to disclose the name of the sponsor of a call within 15 seconds.

92.     Paragraphs 1–66 are hereby incorporated by reference.

93.     When John Doe Caller called Plaintiff's cell phone on the dates alleged *supra*, although Plaintiff stayed on the line for at least 15 seconds and the calls lasted longer than 15 seconds, John Doe Caller failed to disclose the true name of the company calling or the company's sponsor during those initial 15-second periods.

94.     John Doe Caller thereby willfully failed to disclose the name of the sponsor of the phone call within 15 seconds of Plaintiff answering the call.

95.     In failing to do so, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(B)(1).

## COUNT X
### Violations of N.M. Stat. Ann. § 57-12-22(B)(7): Initiating a call using an ATDS that allows for a more than two-second delay when call is answered.

96.     Paragraphs 1–66 are hereby incorporated by reference.

97.     When John Doe Caller called Plaintiff's cell phone on the dates alleged *supra*, John Doe Caller willfully utilized an ATDS that dials and engages the telephone numbers of more than one person at a time but allows the possibility of a called person not being connected to the calling person for a period greater than two seconds.

98.     In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(B)(7).

## COUNT XI
**Violations of N.M. Stat. Ann. § 57-12-22(C)(1): Making a telephone solicitation to a telephone number on the Federal Trade Commission's National Do Not Call Registry.**

99.     Paragraphs 1–66 are hereby incorporated by reference.

100.    When John Doe Caller called Plaintiff's cell phone on the dates alleged *supra*, John Doe Caller willfully transmitted a telephone solicitation to a phone number registered on the Federal Trade Commission's National Do Not Call Registry.

101.    In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(C)(1).

## COUNT XII
**Violations of N.M. Stat. Ann. § 57-12-22(C)(2): Circumventing a Caller ID service.**

102.    Paragraphs 1–66 are hereby incorporated by reference.

103.    By John Doe Caller spoofing its phone numbers when it called Plaintiff's cell phone on the dates alleged *supra*, John Doe Caller willfully and intentionally circumvented Plaintiff's use of his caller ID service.

104.    In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(C)(2).

## COUNT XIII
**Trespass to Chattels**

105.    Paragraphs 1–66 are hereby incorporated by reference.

---

106.   The calls to Plaintiff substantially interfered with, disturbed, and deprived him of the use and enjoyment of his cell phone.

107.   Defendants knew, or should have known, that their calls to Plaintiff's phone, and the phones of other telephone subscribers called, would result in such interference and disturbance to the use of such personal property.

108.   When John Doe Caller called Plaintiff's cell phone on the dates alleged *supra*, John Doe Caller willfully or knowingly utilized an artificial or prerecorded voice to deliver a message which did not state the true identity of the business calling.

109.   In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(b)(1).

110.   When John Doe Caller called Plaintiff's cell phone on the dates alleged *supra*, John Doe Caller willfully or knowingly utilized an artificial or prerecorded voice to deliver a message which did not state the telephone number of the business calling.

111.   In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(b)(2).

112.   Defendants structured their telemarketing operation to shirk regulatory requirements (including, 47 C.F.R. § 64.1200(b)(1)-(2)) that, if followed, would have allowed Plaintiff, and any other telephone subscribers called, to identify the John Doe Caller, contact the sponsor of the calls, and prevent further calls.  This is because Defendants knew they were causing a disturbance to the personal property of telephone subscribers throughout the country, including Plaintiff.

113.   Accordingly, Defendants are liable to Plaintiff under the theory of trespass to chattels.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

---

A.  pursuant to 47 U.S.C. § 227(b)(3)(B) and § 227(c)(5)(B), damages for each of the violations of the TCPA committed by Defendants;

B.  pursuant to 47 U.S.C. § 227(b)(3) and § 227(c)(5), trebled damages for each of the willful or knowing violations of the TCPA committed by Defendants;

C.  pursuant to N.M. Stat. Ann. § 57-12-10(B), damages for each of the violations of the NMUPA committed by Defendants;

D.  pursuant to N.M. Stat. Ann. § 57-12-10(B), damages for each of the willful violations of the NMUPA committed by Defendants;

E.  damages in accordance with the common law theory of trespass to chattels;

F.  for exemplary and punitive damages sufficient to punish Defendants for their attempts to avoid legal reproach;

G.  pursuant to 47 U.S.C. § 227(b)(3)(A), § 227(c)(5)(A), and N.M. Stat. Ann. § 57-12-10(A), for an injunction ordering Defendants to cease their telemarketing calls to Plaintiff;

H.  pursuant to N.M. Stat. Ann. § 57-12-10(C), for Plaintiff's reasonable and necessary attorney's fees and costs;

I.  for pre and post-judgment interest;

J.  and for all other relief to which Plaintiff is justly entitled under New Mexico or Federal law.

*   *   *

Dated this 6th day of December, 2022.

Respectfully Submitted,

By: _____

**Ruben Escano,** *pro se*

2311 Ranch Club Road
Suite #2-180
Silver City, NM 88061
(201) 527-8938
rubenescano@gmail.com